UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

THRIVENT FINANCIAL FOR LUTHERANS,

    Plaintiff,

v.

LINNEA BILLDT EPSTEIN; TAMRA BILLDT JOHNSON; BRIAN JOHN BILLDT; MARK ANDREW STUEN; MOLLY JANETTE OLBERTZ; PAUL FREDERICK STUEN; MARGOT ELIZABETH JOHNSON,

    Defendant.

No. C 08-5671KLS

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT

This case involves a dispute between children as to who is the rightful beneficiary of life insurance proceeds from a policy issued by the Plaintiff. The defendants have filed conflicting claims to the proceeds and the Plaintiff filed this interpleader action and deposited $100,000 into the Court. The Plaintiff has now filed a motion for summary judgment requesting this court dismiss the counterclaim filed by Linnea Billdt Epstein, Tamra Billdt Johnson and Brian John Billdt. Dkt. 31. Having reviewed the pleadings, the undersigned concludes that the Plaintiff is entitled to an order dismissing the named defendants counterclaim and that the plaintiff is entitled to an award of reasonable attorneys' fees and

costs.

## UNDISPUTED FACTS

On November 2, 1990, Corinne B. Stuen purchased a policy of life insurance in the amount of $100,000 on the life of Marcus R. Stuen, her husband, in which she was named as the primary beneficiary. Dkt. 33, Exh. 1. In February, 1995, Corinne Billdt Stuen named her children from a prior marriage (Linnea Billdt Epstein, Tamra Billdt Johnson and Brian John Billdt) as "first contingent beneficiaries." Dkt. 33, Exh. 2.

Corinne B. Stuen died on April 29, 2002. Eighty days following her death, Marcus Stuen, Corinne B. Stuen's surviving husband, signed an "Indemnity Agreement & Affidavit Requesting Transfer of Ownership." (Indemnity Agreement) Dkt. 33, Exh. 3. This agreement was presented to the Plaintiff and the Plaintiff transferred ownership of the policy to Marcus Stuen, who was identified in the document as the widower of Corinne B. Stuen.

On a date unknown, Marcus Stuen presented a Request for Change of Beneficiary and/or Name Form to the Plaintiff in which he named as primary beneficiaries Corinne Billdt Stuen's children from a prior marriage, who were previously designated as "first contingent beneficiaries."

However, on August 20, 2007 Marcus Stuen filed a "Beneficiary Designation - Common" in which he changed the primary beneficiaries to his children from a prior marriage (Mark Andrew Stuen, Molly Janette Olbertz, Paul Frederick Stuen and Margot Elizabeth Johnson). Dkt. 33, Exh. 5.

Marcus R. Stuen died May 21, 2008. Marcus Stuen's children and Corinne B. Stuen's children claim to be the proper beneficiaires of the proceeds from the life insurance policy. In light of the conflicting claims, the Plaintiff commenced this interpleader action and deposited the policy limits with the clerk of this court.

## COUNTERCLAIM

Corinne Stuen's children filed a counterclaim against the Plaintiff asserting (1) that the Plaintiff violated the terms of the contract of insurance, as well as its own internal rules and regulations regarding transfers of ownership, when the Plaintiff transferred ownership of the policy to Marcus Stuen and (2)

that the transfer of ownership to Marcus Stuen was not a valid or legal transfer.

There is no evidence before the Court regarding any violation by the Plaintiff of its "own internal rules and regulations regarding transfers of ownership."

Corinne Stuen's children assert that the Plaintiff violated paragraphs 3.2 and 3.3 of the policy of insurance and that the "Indemnity Agreement & Affidavit Requesting Transfer of Ownership" did not strictly comply with R.C.W. 11.62.010. The Plaintiff asserts that paragraph 3.2 and 3.3 are not applicable in light of the fact that the initial "owner" of the policy was deceased at the time of the transfer and it asserts that the Indemnity Agreement substantially complied with the requirements of R.C.W. 11.62.010.

The Court notes that the Defendants filed additional documents, via their counsel's affidavit (Dkt. 38, Exh. B and C), which purport to show an agreement between Corinne Stuen and Marcus Stuen. However, these documents are not properly before this court for purposes of this summary judgment. Fed. R. Civ. P. 56(e) mandates that "[a] supporting or opposing affidavit must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated." No such showing has been made with regard to Exhibits B and C.

## SUMMARY JUDGMENT STANDARD

Pursuant to Fed. R. Civ. P. 56 ( c), the court may grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim on which the nonmoving party has the burden of proof. *Celotex Corp., v. Catrett,* 477 U.S. 317, 323 (1985).

There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. *Matsushita elec. Indus. Co. V. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt."). *See also* Fed. R. Civ. P. 56 (e). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 253 (1986); *T.W. Elec. Service In. V. Pacific Electrical Contractors Association,* 809 F.2d 626, 630 (9th

cir. 1987).

## CONTRACT OF INSURANCE

The moving defendants assert that the Plaintiff violated paragraphs 3.2 and 3.3 the policy of insurance when it transferred ownership of the policy to Marcus Stuen.

> 3.2 OWNERSHIP. The insured is the owner unless another person is named as the owner in the Application. Ownership may be changed through assignment. While the Insured is living, the owner may exercise all rights set out in this contract. The owner has no membership rights unless the owner is the Insured.
>
> 3.3 ASSIGNMENT. You may assign this contract. We are not bound by the assignment unless it is in writing and filed at our Home Office. We are not responsible for the validity or effect of any assignment. Any Debt on this contract will have prior claim over any assignment. The Insured will keep all membership rights and privileges.

These two sections identify the "owner" of the policy and, among other things, what the owner must do to change ownership. It is clear, however, that these two sections apply when the owner is alive and actually has the ability to exercise the rights of an owner. This language does not apply when the person who was the owner is deceased. It is difficult to imagine how someone who is deceased could even complete a written assignment that could bind the Plaintiff. This language is not applicable to the facts before this court and the moving defendants have failed to present any material factual dispute regarding a breach of contract. The Plaintiff is therefore entitled to summary judgment of dismissal of the counterclaim that is based on this theory.

## SMALL ESTATE AFFIDAVIT - R.C.W. 11.62.010

The Plaintiff asserts that it was obligated to transfer ownership of the insurance policy to Marcus Stuen upon receipt of a Small Estate Affidavit as evidenced in Exh. 3, attached to the Declaration of Linda B. Clapham, Dkt. 33. The moving defendants assert that the "Indemnity Agreement & Affidavit Requesting Transfer of Ownership" does not strictly comply with the requirements of R.C.W. 11.62.010 and therefore that the transfer by the Plaintiff to Marcus Stuen was invalid. In response, the Plaintiffs allege that the Indemnity Agreement substantially complied with the requirements of R.C.W. 11.62.010.

After reviewing the applicable statute and the Indemnity Agreement, the Court concludes that there was substantial compliance with the statute and that the transfer of ownership by the Plaintiff to

Marcus Stuen complied with the applicable law.

The Indemnity Agreement clearly identified Marcus Stuen as the widower of Corinne B. Stuen, the owner of the insurance policy and also affirmatively asserted that no Letters of Administration and no petition of letters or any other procedures have been initiated to have Corinne B. Stuen's estate probated. This clearly identifies Marcus Stuen as the "successor" - someone entitled to the property. The Indemnity Agreement also clearly identified the decedent as a resident of Tacoma, Washington on the date she died. The affidavit was signed July 19, 2002 - more than 40 days following her death. It is clear from the affidavit that all creditors have been paid and that there are no creditor claims outstanding. From this statement it is logical to conclude that all funeral and burial expenses have been paid - particularly in light of the fact that the Indemnity Agreement was signed over two and one-half months following Corinne Stuen's death. The property for which transfer is sought is clearly described.

The Indemnity Agreement failed to mention three of the statutory requirements. First, it did not include Mr. Stuen's address. The Court finds, however, that failure to include the address is not sufficient to find that the transfer of the policy was not a legal transfer. Nothing has been presented to the court to show prejudice to anyone for lack of an address nor has there been any showing that the lack of an address was done for any fraudulent purpose.

Second, the Indemnity Agreement did not specifically state that the value of the decedent's entire estate **that is subject to probate** does not exceed $60,000. The Indemnity Agreement did state, however, that Corinne Stuen's estate was **not subject to probate** as it advised the Plaintiff that no steps have been taken to have her estate probated and none are anticipated. It appears, then, that this probate requirement does not apply to this case. The moving defendants assert that the face value of the policy ($100,000) means that the value of the decedent's estate that is subject to probate exceeded $60,000. This argument is not persuasive as the policy's face value was not being paid out to Corinne Stuen's estate. Rather the ownership of the contract was being transferred and the $100,000 could not be paid to anyone until Marcus Stuen's death.

Third, the Indemnity Agreement did not state that Marcus Stuen, the claiming successor, has given written notice to other successors of the decedent. A "successor" is a person entitled to the claimed property. R.C.W. 11.62.005(2)(a)(I). The failure to meet this requirement is also not fatal as there has

been no showing made that there were other successors who should have received any written notice.

The undersigned therefore finds that the written Indemnity Agreement & Affidavit Requesting Transfer of Ownership substantially complied with R.C.W. 11. 62.010 and that the Plaintiff did not breach any contractual obligation or law when it transferred the ownership of the policy, as required under R.C.W. 11.62.020, to Marcus Stuen, the widower of Corinne B. Stuen. The Plaintiff is, therefore, entitled to summary judgment dismissing the entirety of the moving defendants' counterclaim.

## OLYMPIC STEAMSHIP

The moving defendants also oppose the granting of summary judgment to the Plaintiff on the ground that such an order "would unfairly deprive Corinne's Children of the right to seek an award of attorneys' fees pursuant to *Olympic Steamship*."[1] Dkt. 39, p. 6. The Court is unaware of any legal authority that would prohibit the granting of summary judgment of dismissal, when appropriate, on the grounds that dismissing a case would deprive a party of the opportunity to seek an award of attorney fees. The undersigned has determined that there is no legal basis to require the Plaintiff remain as a party to this litigation. It is difficult to see how the moving defendants would then somehow be entitled to an award of attorney fees from the Plaintiff - who has no continuing liability or obligation to the remaining defendants.

In addition, the undersigned finds that *Olympic Steamship* is not applicable in this case. The Plaintiff did not force the moving defendants to pursue a claim to obtain benefits under a policy. Rather, the Plaintiff acknowledges that there are opposing claims to the proceeds from the insurance policy and has appropriately filed an interpleader action so the Court can determine the rightful beneficiaries. The facts of this case do not come under the theory of *Olympic Steamship*.

## ATTORNEYS' FEES AND COSTS

The Plaintiff has requested an award of its attorneys' fees and costs. The moving defendants do not oppose such an award and, for the reasons set forth in the Plaintiff's brief, the Court agrees that an award of reasonable attorneys' fees and costs incurred in filing this action and pursuing its discharge from

---

[1] *Olympic S.S. Co., Inc. V. Centennial Ins. Co.,* 117 Wn.2d 37, 811 P.2d 673 (1991).

liability is appropriate and warranted.

The moving defendants do oppose an award of reasonable attorneys' fees and costs from the funds deposited into the registry of the court. They assert that the contractual provision contained in the Indemnity Agreement (Dkt. 33-2, Exh 3) requires the Plaintiff to seek its attorneys' fees and costs from Marcus Stuen - or more specificaly, from the estate of Marcus Stuen.

In the Indemnity Agreement Marcus Stuen agreed to indemnity the Plaintiff "from any loss or damage it may suffer, including claims of creditors, beneficiaries, taxes, claims of heirs or legatees, court costs, attorney's fees and judgments at law or in equity which it may incur by virtue of transferring the ownership of said life insurance contract." The moving plaintiffs assert that all of the Plaintiffs fees and costs were incurred by virtue of the transfer of ownership of said life insurance contract. Therefore, in order to recover its reasonable attorneys' fees and costs the Plaintiff should commence additional litigation as well as incur additional attorneys' fees and costs in order to recover their attorneys' fees and costs incurred in this interpleader action.

This does not appear to the court to be an equitable resolution with regard to this case. In addition, the Court can easily envision significant dispute as to whether the fees and costs incurred were actually incurred "by virtue" of the transfer or whether they were incurred "by virtue" of a breach of an agreement between Corinne and Marcus Stuen.

The theory behind an award of attorney fees in the interpleader action itself is recognition of the fact that the Plaintiff is a mere stakeholder and has no interest in the interpleaded funds. However, with adverse claims being made against those funds, the Plaintiff has no simple way for determining who is entitled to the funds and it was left with only one option and that was to institute an interpleader action so the Court could make that determination.

Courts have discretion to award attorney fees and costs to a disinterested stakeholder in an interpleader action. *Abex Corp. V. Ski's Enterprises, Inc.,* 748 F.2d 513, 516 (9th Cir. 1984). Fees and costs are to be paid out of the funds deposited into the registry. *Massachusetts Mut. Life Ins. Co. V. Morris,* 61 F.2d 104, 105 (9th Cir. 1932). An award of reasonable attorney fees and costs from the funds deposited into the registry of the court makes the Plaintiff whole and ends its involvement in this litigation. The consequence of such an award paid out of the funds deposited into the registry of the court

may or may not play a roll in the continuing litigation between the defendants.

The Court is awarding the Plaintiff its reasonable attorney fees and costs incurred in the filing of this action and pursuing its discharge from liability. Counsel for the Plaintiff shall file appropriate documentation setting forth the basis for its claim for reasonable attorneys' fees and costs no later than October 30, 2009. The moving defendants may file any objections on or before November 6. The Plaintiff may file any rebuttal documents on or before November 13 and the noting date for determination of reasonable attorneys' fees and costs shall be November 13, 2009.

IN IS HEREBY ORDERED:

(1) The Plaintiff's motion for summary judgment dismissing the moving defendants counterclaim is hereby granted (Dkt. 31).

(2) The Plaintiff's request for an award of reasonable attorneys' fees and costs is hereby granted (Dkt. 31).

(3) The Clerk shall note on the Court's November 13, 2009 motion docket a final determination of the Plaintiff's reasonable attorneys' fees and costs.

DATED this 8th day of October, 2009.

*/s/ Karen L. Strombom*
Karen L. Strombom
United States Magistrate Judge

Order Granting Motion
for Summary Judgment
Page - 9